BERTHA GORE AND HUBERT A. GORE, AND REGINALD GORE, INFANTS, BY THEIR GUARDIAN AD LITEM, BERTHA GORE, PLAINTIFFS-RESPONDENTS, v. UNITED STATE STEEL CORPORATION, DEFENDANT-APPELLANT.

Argued March 22, 1954—Decided May 3, 1954.

302

*Mr. Burtis S. Horner* argued the cause for the appellant (*Messrs. Stryker, Tams & Horner,* attorneys).

*Mr. John A. Baird* argued the cause for the respondents (*Messrs. Roskein & Laird,* attorneys).

The opinion of the court was delivered by

JACOBS, J.   The defendant moved to dismiss the plaintiffs' action under the doctrine of *forum non conveniens*. The Law Division denied the motion and the Appellate Division granted leave to appeal under *R. R.* 2:2–3(*b*).   We certified upon our own motion.

The defendant United States Steel Corporation is incorporated in New Jersey but does business throughout the country.   One of its branches, known as the Tennessee Coal & Iron Division, operates the Fairfield Tin Mill at Fairfield, Alabama.   On August 10, 1952 the decedent Hubert Gore was at the tin mill as an employee of Nick & Hendon, independent painting contractors engaged in doing work at the defendant's premises in Alabama, and allegedly suffered injuries which resulted in his death.   On June 27, 1953 the plaintiffs, being the decedent's dependents, widow and children resident in Alabama, filed their complaint in the New Jersey Superior Court, Law Division, Hudson County, alleging that (1) the decedent and his employer were covered by the Workmen's Compensation Act of Alabama; (2) the decedent was an invitee and the defendant was under a duty of furnishing him with a reasonably safe place to work; (3) the defendant negligently allowed on the premises an uninsulated wire which burned and shocked the decedent and caused his death; and claiming damages in the sum of $100,000 in their action for wrongful death under "a statute of the State of Alabama permitting such action, being Title 7, Section 123, The Code of Alabama."   An amendment to the complaint set forth that their action for wrongful death was brought under the aforementioned statute "as modified by Title 26, Section 312 of said Code, which transfers said cause of action for wrongful death under said Homicide Act from the personal representative of the deceased to the actual dependents of said deceased."

In due time the defendant filed its motion to dismiss setting forth that ' (1) the plaintiffs are residents of Alabama; (2) the defendant is subject to process in Alabama; (3) the accident out of which the cause of action arose occurred in

Alabama; (4) the liability alleged and the remedy sought are based upon an interpretation of the laws of Alabama; (5) all of the witnesses are residents of Alabama and while subject to subpoena in Alabama are not answerable to process in New Jersey; (6) the expense to the parties and the witnesses' inconvenience and loss of time will be burdensome and substantially heavier if the case is tried in New Jersey rather than in Alabama, and (7) the action is one in which the doctrine of *forum non conveniens* should be applied. The affidavits supporting the motion set forth that the distance from Fairfield, Alabama, to Jersey City, New Jersey, is approximately 980 miles; the defendant's witnesses will include supervisory and other employees who work at its Alabama plant; the accident occurred at Fairfield, Alabama, and all of the witnesses including those not in the defendant's employ live in and about Fairfield and are subject to subpoena in Alabama but not in New Jersey; Alabama juries in tort cases are "at times allowed and at times required to view the site of an accident"; the case involves an interpretation "of certain Alabama statutes and law which are constantly being considered" by Alabama courts; the statute of limitations has not run against an action in Alabama by the personal representative of the deceased; and the case if instituted in Alabama would probably be reached for trial within six months. The affidavit in opposition to the motion was executed by an Alabama attorney for the plaintiffs. He asserted that the average verdict in the "State and Federal Courts for death actions in Jefferson County Alabama would not exceed $10,000" and that he knew "of no verdict in the State of Alabama in excess of $10,000 for any colored decedent"; apparently the decedent in the instant matter was colored. He stated further that "it is recognized generally among attorneys at the Bar in Alabama that juries generally are much more conservative in awards for colored claimants than white claimants, and this prevails particularly in death actions." He expressed the view that the plaintiffs' action was under the Workmen's Compensation Law of Alabama and not under the Alabama Homicide Act and

that the one-year period of limitation in the Compensation Law was applicable.

On October 28, 1953 the Law Division denied the motion to dismiss but directed the plaintiffs to file an amended complaint "making more definite and certain" the Alabama statute or statutes upon which they grounded their right to relief. On November 25, 1953 an order granting leave to appeal was entered by the Appellate Division; this order contained a provision to the effect that the defendant had agreed that if the New Jersey action is dismissed and an Alabama action is instituted within three months thereafter it will not raise any applicable one-year statute of limitations as a defense. Before this court, the defendant's position has been that the wrongful death action may still properly be instituted in Alabama within two years of August 10, 1952; in any event, it has renewed its waiver of the limitation defense as embodied in the Appellate Division's order. In support of the determination below the plaintiffs urge: (1) that they have an absolute right, guaranteed by the privileges and immunities clauses of the Federal Constitution, to maintain their action in New Jersey, and (2) that the trial judge properly exercised his discretion in refusing to dismiss the proceedings on the ground that Alabama would be a more convenient forum.

Under the doctrine of *forum non conveniens* a court may decline jurisdiction where there is available another forum where trial will best serve the convenience of the parties and the ends of justice. *Koster v. (American) Lumbermens Mutual Cas. Co.,* 330 *U. S.* 518, 527, 67 *S. Ct.* 828, 91 *L. Ed.* 1067, 1076 (1947); *Gulf Oil Corp. v. Gilbert,* 330 *U. S.* 501, 507, 67 *S. Ct.* 839, 91 *L. Ed.* 1055, 1062 (1947). Its origins are somewhat obscure although the term itself appeared early in Scottish practice where the courts declined to hear cases when justice dictated that the parties avail themselves of other forums. See *Barrett, The Doctrine of Forum Non Conveniens,* 35 *Calif. L. Rev.* 380, 386 (1947); *Braucher, The Inconvenient Federal Forum,* 60 *Harv. L. Rev.* 908, 909 (1947). In 1929 Paxton Blair collected many

decisions indicating that it had in one form or other been applied in many American courts. See *Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 *Col. L. Rev.* 1 (1929). And in 1941 Justice Frankfurter referred to it as a familiar doctrine under which a court having jurisdiction may decline to entertain an action "that in justice should be tried elsewhere," and as a firmly imbedded manifestation of a "civilized judicial system." See *Baltimore & Ohio R. Co. v. Kepner*, 314 *U. S.* 44, 55, 62 *S. Ct.* 6, 11, 86 *L. Ed.* 28, 34 (1941).

In the recent *Gilbert* and *Koster* cases, *supra*, the United States Supreme Court had occasion to apply the doctrine and express the major considerations underlying its exercise. In the *Gilbert* case a Virginia resident sued a Pennsylvania corporation in the United States District Court for the Southern District of New York for loss resulting from the defendant's negligence in delivering gasoline to his warehouse tanks and pumps in Virginia. 62 *F. Supp.* 291. The District Court dismissed under the doctrine of *forum non conveniens* and its action was sustained by the Supreme Court. In the course of his persuasive opinion for the Supreme Court Justice Jackson said [330 *U. S.* 501, 67 *S. Ct.* 843]:

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the

country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

In the *Koster* case a derivative action was brought by a New York resident in the United States District Court for the Eastern District of New York against an Illinois insurance company and other Illinois defendants. 64 *F. Supp.* 595. Notwithstanding the plaintiff's New York residence the Supreme Court sustained the dismissal of the action as having been brought in an inconvenient forum. It stated the dispositive consideration to be "where trial will best serve the convenience of the parties and the ends of justice," [330 *U. S.* 518, 67 *S. Ct.* 833] and pointed out that under modern conditions corporations are often incorporated in states other than those where their main business is conducted and that under such circumstances the corporate domicil is entitled to little weight under the convenient forum doctrine "which resists formalization and looks to the realities that make for doing justice." Similarly, in *Universal Adjustment Corp. v. Midland Bank,* 281 *Mass.* 303, 315, 184 *N. E.* 152, 158, 159, 87 *A. L. R.* 1407 (*Sup. Ct. Jud.* 1933), the Massachusetts court declined to entertain an action by a Massachusetts corporation as assignee of money deposited by a Russian bank in an English bank over which jurisdiction was obtained by trustee writ. The court, through Chief Justice Rugg, expressed the controlling principle to be that "where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum." It referred to the many decisions in which courts have refused to take jurisdiction of actions involving the internal affairs of foreign corporations as but a specific application of the same principle and as showing that "domestic residence of parties is not decisive in requiring courts to assume jurisdiction of a cause,

but that the basis of inquiry will be whether justice can be as well done here as in another jurisdiction to which parties may have access." The New Jersey cases on the subject suggest an approach similar to that taken in the cited authorities. See *Carnegie v. Laughlin,* 132 *N. J. Eq.* 443 (*E. & A.* 1942); *Sielcken v. Sorenson,* 111 *N. J. Eq.* 44 (*Ch.* 1932). *Cf. Weed v. Smith,* 15 *N. J. Super.* 250 (*App. Div.* 1951); *James H. Rhodes & Co. v. Chausovsky,* 137 *N. J. L.* 459 (*Sup. Ct.* 1948); *Quigley Co., Inc., v. Asbestos Limited, Inc.,* 134 *N. J. Eq.* 312 (*Ch.* 1944), affirmed 135 *N. J. Eq.* 460 (*E. & A.* 1944); *Standard Surety, &c., Co. v. Caravel Industries Corp.,* 128 *N. J. Eq.* 104 (*Ch.* 1940); *Kantakevich v. D. L. & W. R. R. Co.,* 18 *N. J. Misc.* 77 (*Circ. Ct.* 1940); *Anderson v. D. L. & W. R. R. Co.,* 18 *N. J. Misc.* 153 (*Circ. Ct.* 1940).

In the *Sielcken* case, *supra,* a bill of complaint for a partnership accounting was filed in the New Jersey Court of Chancery. The partnership was a New York concern, the complainant was a resident of New York and all of the defendants except Sorenson were residents of New York. Sorenson was a resident of New Jersey and was a proper though not a necessary party defendant. Vice-Chancellor Backes dismissed the proceeding on the ground that New York was the more convenient forum. In the *Carnegie* case, *supra,* the plaintiff filed a bill of complaint in the New Jersey Court of Chancery charging that the defendant Laughlin had failed to perform the terms of a voting trust agreement which concerned shares of stock in General Tung Oil Co., a Delaware corporation. The complainant and the defendant Laughlin were nonresidents, but another proper defendant, the Commercial Trust Company of New Jersey, custodian of the shares of stock, was a New Jersey corporation and the voting trust agreement stipulated that it should be governed by the laws of New Jersey. Vice-Chancellor Fielder dismissed the proceeding, pointing out that no reason appeared for the plaintiff's institution of his action in New Jersey rather than in the states where Laughlin and General Tung Oil Co. were domiciled. The Court of Errors and Appeals affirmed the

dismissal on the opinion of the vice-chancellor. In the *Kantakevich* case, *supra,* the Circuit Court declined to dismiss a negligence action, though the parties were residents of Pennsylvania and the cause of action arose in that state, on the ground that the inconveniences advanced were not sufficiently weighty to disturb the plaintiff's choice of forum; however, in the course of its opinion the court suggested that reasons for declining jurisdiction "might be successfully advanced in cases between citizens of our state" and expressed the broad view that "where the ends of justice clearly indicate that if a controversy tried in this state would result in an unfair burden upon and disadvantage to citizens of this state or that the controversy may be more suitably tried and the remedy more complete in another forum, then the parties should be relegated to that forum."

In 1948 Congress revised *Title* 28 of the *United States Code* and provided in part (28 *U. S. C. A.,* § 1404(*a*)) that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The reviser's note states that the provision "was drafted in accordance with the doctrine of *forum non conveniens,* permitting transfer to a more convenient forum, even though venue is proper." On the other hand, Judge Goodrich has pointed out that the doctrine is "quite different" (*All States Freight, Inc. v. Modarelli,* 196 *F. 2d* 1010, 1011 (*C. C. A.* 3 1952)) since it involves a dismissal, or perhaps a stay, rather than a transfer as provided in § 1404(*a*). But *cf. Maloney v. New York N. H. & H. R. Co.,* 88 *F. Supp.* 568 (*D. C. N. Y.* 1949). In any event, it is significant that § 1404(*a*) has been freely applied though a resident plaintiff or a resident defendant was a party to the litigation. See *General Felt Products Co. v. Allen Industries, Inc.,* 120 *F. Supp.* 491 (*D. C. Del.* 1954); *Duffy v. United States,* 114 *F. Supp.* 881 (*D. C. N. Y.* 1953); *Nicol v. J. C. Penney Co.,* 97 *F. Supp.* 83 (*D. C. Mich.* 1951); *Kasper v. Union Pac. R. Co.,* 97 *F. Supp.* 275 (*D. C. Pa.* 1951); *Hansen v. Nash-Finch Co.,* 89 *F. Supp.* 108 (*D. C. Minn.* 1950). In

*B. Heller & Co. v. Perry*, 201 *F. 2d* 525, 527 (*C. C. A.* 7 1953), merchandise being carried by the defendant railroads was lost as the result of a sudden flood at Kansas City, Kansas. The 30 or more material witnesses resided in the Kansas City community and could not be compelled to attend trial in Illinois. Nevertheless, the plaintiffs sued the railroads in the United States District Court for the Northern District of Illinois. The district judge transferred the proceedings to the Kansas district and his action was sustained by the Court of Appeals; it is worthy of note that the court's opinion does not even refer to the residence of the parties but stresses that the flood occurred in Kansas City, the numerous witnesses and documents were in that community, and "No controverted questions depend upon any event occurring in the Northern District of Illinois; both parties must rely upon evidence of events wholly removed from that district."

It is now well recognized that the dismissal of a nonresident's action under principles of *forum non conveniens* in nowise violates the privileges and immunities clauses of the federal constitution. See *Kantakevich v. D. L. & W. R. R. Co., supra,* at *p.* 79; *Barrett, supra,* at *p.* 402; *Braucher, supra,* at *p.* 914; *Blair, supra,* at *p.* 6. In *Douglas v. New York, N. H. & H. R. Co.,* 279 *U. S.* 377, 49 *S. Ct.* 355, 356, 73 *L. Ed.* 747 (1929) a Connecticut citizen and resident brought an action under the Federal Employers' Liability Act in New York against a Connecticut corporation for injuries sustained in Connecticut. The trial court dismissed the action as having been brought in an inconvenient forum and this was sustained by the United States Supreme Court. In the course of his opinion for the Court, Justice Holmes distinguished between citizens and residents and pointed out that there was "no discrimination between citizens as such, and none between nonresidents with regard to these foreign causes of action," and that "There are manifest reasons for preferring residents in access to often overcrowded courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the courts concerned." The distinction made between state residents and

citizens has been termed unrealistic and it has been suggested that the Supreme Court's holding may be rested on the ground that fair and reasonable discriminations in favor of the use of local state courts by local state residents or citizens do not run counter to any constitutional inhibitions. See *Barrett, supra,* at *p.* 392.

However, the doctrine, as we construe it, is non-discriminatory and does not turn on considerations of domestic residence or citizenship as against foreign residence or citizenship. It turns, rather, on considerations of convenience and justice and it may, therefore, be applied for and against domestic residents and citizens as well as for and against foreign residents and citizens. It is true that under the doctrine an action by or against a resident will ordinarily not be dismissed as being in an inconvenient forum, but it is also true that ordinarily an action by or against a nonresident will not be dismissed as such. It is only in those exceptional cases where a weighing of all of the many relevant factors, of which residence is but part, decisively establishes that there is available another forum where trial will best serve the convenience of the parties and the ends of justice, that the doctrine is ever invoked. Under this approach the plaintiffs' first contention that they have an absolute right, guaranteed by the privileges and immunities clauses of the federal constitution, to maintain their action in a New Jersey court against the defendant corporation of New Jersey is without any semblance of basis and must be rejected. Although the plaintiffs have placed reliance on cases such as *Schultz v. Union Pacific R. Co.,* 118 *Cal. App.* 2d 169, 257 *P.* 2d 1003 (*Cal. Ct. App.* 1953) and *State ex rel. Southern R. Co. v. Mayfield,* 362 *Mo.* 101, 240 *S. W.* 2d 106 (*Sup. Ct.* 1951), *certiorari* denied, 342 *U. S.* 871, 72 *S. Ct.* 107, 96 *L. Ed.* 655 (1951), it is sufficient to point out that they dealt only with the issue of whether a state court is at liberty to decline jurisdiction of a proceeding under the Federal Employers' Liability Act which embodies special venue provisions. In the instant matter we are in nowise concerned with that question, although in *State of Missouri ex rel. Southern R.*

*Co. v. Mayfield,* 340 *U. S.* 1, 71 *S. Ct.* 1, 95 *L. Ed.* 3 (1950), the Supreme Court indicated that *forum non conveniens* may be applied by a state court even in a proceeding under the Federal Employers' Liability Act so long as the policy is administered impartially and without discrimination. *Cf.* Frankfurter, J. in *Pope v. Atlantic Coast Line R. Co.* 345 *U. S.* 379, 73 *S. Ct.* 749, 97 *L. Ed.* 1094, 1103 (1953).

We come now to the plaintiffs' second contention, namely, that the trial judge properly exercised his discretion in refusing to dismiss the proceedings on the ground that Alabama would be a more convenient forum. New Jersey has no real connection with the controversy although the defendant is a New Jersey corporation. It is undisputed that in Alabama the defendant is fully amenable to service and the satisfaction of any judgment obtained against it. The plaintiffs are residents of Alabama and the cause of action arose there in a plant operated by the defendant as a complete and wholly separate division of its far flung activities. All of the witnesses for the plaintiffs as well as the defendant are there and they can be subpoenaed for trial there but not in New Jersey. The jury view can be taken in Alabama but not in New Jersey. The briefs before us suggest various questions of Alabama law, statutory and otherwise, which will be presented at the trial and may more readily be passed upon by an Alabama court. The distance between Alabama and New Jersey is substantial and the expense and inconvenience of having a New Jersey rather than an Alabama trial would burden all of the parties and their witnesses. It seems clear that the foregoing considerations point decisively to trial in Alabama where a local judge and jury would be best suited to pass on the local incident and controversy presented.

Notwithstanding the intimations by the plaintiffs to the contrary, we assume that the Alabama judicial system is fully equipped to insure their fair and equal treatment at the hands of a local judge and jury. *Cf. Gulf Oil Corp. v. Gilbert, supra.* The plaintiffs' motivating reason for selecting New Jersey rather than Alabama for the institution of their

action was the expectation of receiving a substantially higher verdict. It may well be that plaintiffs' verdicts in metropolitan areas where average income and living costs exceed those elsewhere will generally be greater. But decent judicial administration could not tolerate that as a persuasive or even legitimate reason for burdening metropolitan communities with litigious controversies which arose elsewhere and should in all justice be tried there. Any opposing view would open our courts to extensive litigation which would deal exclusively with foreign issues and would necessarily retard the expeditious determination of local issues. That the danger is not unreal may be gathered from the discussion in *Barrett, supra,* at *p.* 383 where reference is made to a Chicago, Illinois attorney who, in the course of a single year, filed 100 actions against railroads for nonresident plaintiffs on foreign claims for injuries which occurred in Arizona, California, New Mexico and elsewhere. In the *Gilbert* and *Koster* cases, *supra,* the Supreme Court met the problem forthrightly in opinions which, after fairly setting forth the controlling criteria, sustained dismissals of pending federal actions on the ground that they had been brought in inconvenient forums; and shortly thereafter Congress enacted § 1404(*a*) which vested broad power in the federal courts to transfer causes to more convenient districts. The federal trend in favor of the use of considerations of *forum non conveniens* seems to us to be a wholesome one and in furtherance of the sound administration of justice. State courts should not hesitate to follow it in appropriate circumstances. In the instant matter we consider the undisputed facts to be entirely compelling; the plaintiffs should justly have instituted their action in a court sitting in Alabama and we find no proper reason for their having chosen or being permitted to remain in this forum.

The plaintiffs contend that since they instituted their New Jersey action the one-year limitation in the Alabama Workmen's Compensation Act has barred further claim in Alabama. That limitation, however, appears to deal with compensation payable by the employer and to be inapplicable to

a wrongful death claim against a third party. We accept the position advanced by the defendant that action on such claim is subject to the two-year period embodied in the Alabama Homicide or Wrongful Death Act, which has not run, and that, in all events, any pertinent one-year limitation has been effectively waived in accordance with the agreement embodied in the order of the Appellate Division. We see no danger to the plaintiffs on the ground of limitation if proper action is forthwith instituted in Alabama; and to furnish complete assurance on this score we point out that if, perchance, any prejudicial error should later appear with respect to the effectiveness of the defendant's waiver of limitation, relief in our State will undoubtedly be made available under *R. R.* 4:62–2. *Cf. Johnson & Johnson v. Weissbard,* 11 *N. J.* 552, 555 (1953); *Klapprott v. United States,* 335 *U. S.* 601, 613, 69 *S. Ct.* 384, 93 *L. Ed.* 266, 276 (1949), judgment modified, 336 *U. S.* 942, 69 *S. Ct.* 398, 93 *L. Ed.* 1099 (1949), motion to clarify denied, 336 *U. S.* 949, 69 *S. Ct.* 877, 93 *L. Ed.* 1105 (1949).

The order entered in the Law Division is reversed with direction that the amended complaint be dismissed, without costs.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For affirmance*—Justices HEHER and BRENNAN—2.