44 N.J. Super. 536 (1957)
131 A.2d 39
ANGEL PAIN VARGAS, PLAINTIFF,
v.
A.H. BULL STEAMSHIP CO., DEFENDANT. FELIPE ALMESTICA, PLAINTIFF,
v.
BALTIMORE INSULAR LINE, INC., DEFENDANT. JUAN ECHEVARRIA RODRIGUEZ, PLAINTIFF,
v.
A.H. PULL STEAMSHIP CO., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 4, 1957.
*538 Messrs. McCarter, English & Studer (Mr. Nicholas Conover English, of counsel), attorneys for defendants.
Mr. Samuel L. Cole, attorney for plaintiffs.
GAULKIN, J.C.C. (temporarily assigned).
In each of the above entitled cases, the defendant moves to dismiss the action on the ground that this court is a forum non conveniens.
*539 Each plaintiff is a resident of Puerto Rico. Each complaint alleges plaintiff was injured in an accident on a defendant's ship, for which that defendant is liable under "46 U.S. Code 688, commonly known as the Jones Act." Each accident happened in Puerto Rico.
Each defendant is a corporation organized under the laws of New Jersey. None of the defendants could have been served with process in Puerto Rico when these actions were started. Defendants do say that since their ships ply regularly between Puerto Rico and American mainland ports, plaintiffs could have attached the ships. However, defendants do not show that attachment in Puerto Rico is as simple and effective as the service of plenary process. Attachment usually involves posting bond, the expense and the mechanics of seizure, questions of ownership, liens, equity, and so forth, to say nothing of the limited effect and enforceability of the resulting judgment. Therefore, since defendants have not sustained the burden to prove otherwise, I find for the purpose of these motions that defendants could not have been sued in Puerto Rico.
Anticipating this, each defendant "pledges itself to voluntarily appear in any action which may be brought against it in Puerto Rico," if these motions to dismiss are granted.
The question therefore narrows itself to this  assuming these be cases which the court would dismiss under forum non conveniens had defendants been amenable to process in Puerto Rico when the actions were started, may the court do so upon defendants' present offer to appear there?
Plaintiffs contend the court may not do so for the following reasons: (1) by virtue of the federal statutes and cases, a state court does not have the power to refuse to hear a case brought under the Jones Act; (2) the doctrine of forum non conveniens may be applied only when plaintiff had a choice of forums when he started suit, and (3) even if (1) and (2) be resolved against plaintiffs, the facts here do not justify the application of the doctrine.

*540 I.
In support of argument (1), plaintiffs say the Jones Act (46 U.S.C.A. § 688) gives plaintiffs who sue thereunder the benefit of "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees," one of which statutes is the Federal Employers' Liability Act (45 U.S.C.A. §§ 51-60); that section 56 of the Federal Employers' Liability Act gives the plaintiff the absolute right to sue, inter alia, in the courts of the state in which the defendant resides; and that these statutes compel state courts to retain and decide all F.E.L.A. and Jones Act cases instituted therein, even though those courts would dismiss, under forum non conveniens, similar cases not brought under those acts. In support of this proposition plaintiffs rely chiefly on Miles v. Illinois Central R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129 (1942); Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949).
There is no need to discuss these cases in detail because in State of Missouri ex rel. Southern R. Co. v. Mayfield, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950), the Supreme Court settled the question adversely to the position taken by plaintiffs. As Justice Jacobs said in Gore v. U.S. Steel Corp., 15 N.J. 301, 312 (1954), certiorari denied 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954), in the Mayfield case "the Supreme Court indicated that forum non conveniens may be applied by a state court even in a proceeding under the Federal Employers' Liability Act so long as the policy is administered impartially and without discrimination." Plaintiffs contend that "the underpinning of the Mayfield case has been cut away by Pope v. Atlantic Coast Line R. Co., 345 U.S. 379, 73 S.Ct. 749, [97 L.Ed. 1094] (1953)," and therefore the Mayfield case may no longer be considered as controlling, but an examination *541 of the opinions in the Pope case shows it did not weaken the Mayfield case in the least. Many cases decided since Pope have held Mayfield still to be controlling. E.g., Hill v. Upper Mississippi Towing Corporation, 141 F. Supp. 692 (D.C.D. Minn. 1956); Price v. Atchison, T. & S.F. Ry. Co., 42 Cal.2d 577, 268 P.2d 457, 43 A.L.R.2d 756 (Sup. Ct. 1954); Atlantic Coast Line R. Co. v. Pope, 93 Ga. App. 550, 92 S.E.2d 300 (Ct. App. 1956); Peterie v. Thompson, 10 Ill. App.2d 100, 134 N.E.2d 534 (App. Ct. 1956); Johnson v. Chicago B. & Q.R. Co., 243 Minn. 58, 66 N.W.2d 763 (Sup. Ct. 1954); Maynard v. Chicago & N.W. Ry. Co., 247 Minn. 228, 77 N.W.2d 183 (Sup. Ct. 1956); St. Louis-San Francisco Ry. Co. v. Superior Court, 276 P.2d 773 (Okl. Sup. Ct. 1954); Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). See, also, the notes in 43 A.L.R.2d 774 and 48 A.L.R.2d 850.

II.
We return, then, to the principal question  may forum non conveniens be applied in the only jurisdiction in which plaintiff can obtain service on defendant, upon defendant's offer to submit to suit in the more convenient forum?
Defendants cite Rodriguez v. A.H. Bull Steamship Co., 286 App. Div. 804, 143 N.Y.S.2d 618 (App. Div. 1955). In that case the lower court had refused to dismiss the action brought in New York under the Jones Act by a citizen of Puerto Rico against a New Jersey corporation, for an accident which happened in Puerto Rico. The Appellate Division reversed. Its brief memorandum did not discuss the law, but said:
"On the defendant's stipulation to appear in the courts of Puerto Rico in any action instituted by the plaintiff to recover on the cause of action alleged in the complaint herein and to waive the statute of limitations, the orders appealed from are unanimously reversed, the motion to dismiss the complaint granted and judgment is directed to be entered in favor of the defendant dismissing the complaint herein."
*542 Although "the New York courts will as a matter of public policy refuse to retain jurisdiction in an action between non-residents for torts arising outside the state, unless special reasons are shown" (48 A.L.R.2d 831, and cases cited), it must be admitted that in the Rodriguez case defendant's consent to appear was apparently the controlling consideration.
We accept it to be settled that "in all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501, at pages 506-507, 67 S.Ct. 839, at page 842; Foster-Milburn Co. v. Knight, 181 F.2d 949 (2 Cir. 1950); Gore v. U.S. Steel Corp., supra. Plaintiffs insist that "amenable to process" means it "shall not be dependent merely upon the will or grace of the defendant, but must be provided by law," citing Tivoli Realty v. Interstate Circuit, 167 F.2d 155, 157 (5 Cir. 1948), certiorari denied 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762 (1948). See, also, the dissenting opinion in Paramount Pictures v. Rodney, 186 F.2d 111, 119 (3 Cir. 1950), and General Electric Co. v. Central Transit Warehouse Co., 127 F. Supp. 817 (D.C.D. Mo. 1955). However, the Tivoli case was not one in which the defendants moved to dismiss on forum non conveniens in the U.S. District Court in Delaware where the action was pending, but one in which the defendants had gone into Texas, Tivoli's home state, to enjoin the Delaware action. That is a quite different situation than the application of forum non conveniens in the jurisdiction in which the action is pending. As the Fifth Circuit Court of Appeals said in the Tivoli case [167 F.2d 156], "the parties failed to present the issue of inconvenience to the Delaware court * * *; but federal district courts are within a single judicial system * * *. Therefore, as a matter of comity, we think the court below erred in granting the injunction." Miles v. Illinois Central R. Co., Baltimore *543 & Ohio R. Co. v. Kepner, and Pope v. Atlantic Coast Line R. Co., supra, were all cases in which the defendants were denied injunctions in jurisdictions other than the one in which the action was pending. See, also, the notes in 57 A.L.R. 77, 115 A.L.R. 237, and 6 A.L.R.2d 896.
Compare with such cases, State of Missouri ex rel. Southern R. Co. v. Mayfield, supra, and Paramount Pictures v. Rodney, supra. The latter case was the sequel to the Tivoli case. The defendants in the Tivoli case, after the decision in 167 F.2d 155 quoted above, applied to the U.S. District Court in Delaware to transfer the case to the U.S. District Court in Texas under 28 U.S.C., section 1404(a). The district judge refused, but the Third Circuit Court of Appeals reversed, Paramount Pictures v. Rodney, supra. It is true that the majority opinion in Paramount Pictures v. Rodney disclaimed any intention of disagreeing with the Tivoli case. It pointed out that 1404(a) had not yet been adopted when Tivoli was decided, inferring that under 1404(a) Tivoli might have been decided differently. But Pope v. Atlantic Coast Line R. Co., supra, shows that the decision in Tivoli (167 F.2d 155) would be the same under 1404(a). In the General Electric case the District Court found the defendant was amenable to process in the more convenient jurisdiction and did transfer the case to it, under 1404(a).
In short, no authority has been submitted, nor have I found any, in which the application of the doctrine has been refused to a defendant who agreed to accept service, solely because defendant was not subject to process in the more convenient jurisdiction when the action was started.
The nub of plaintiffs' argument is that forum non conveniens may be applied only where a plaintiff has deliberately chosen the most vexatious of two or more available forums. If that be true, it may not be applied here, for when plaintiffs filed these actions they had no choice of forums. However, I do not think it is true that the use of the doctrine is so limited.
*544 It must be admitted that there is much language in the authorities that lends support to the idea that the doctrine is applied only when the plaintiff, by choice of an inconvenient forum, does "`vex,' `harass,' or `oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." Gulf Oil Corp. v. Gilbert, supra. Indeed, some authorities treat the doctrine as if its sole purpose is to prevent "forum shopping," O'Herin, "Forum Non Conveniens in Federal Employers' Liability Act Cases," 1 Def. L.J. 48 (1957). Forum shopping is not an unreal problem (Gore, supra, 15 N.J., at page 313), but the use of forum non conveniens to meet this problem when it arises is not the reason for the doctrine but merely one beneficial effect of its operation.
The circumstances under which the court will apply the doctrine is a matter of local law, State of Missouri ex rel. Southern R. Co. v. Mayfield, supra; State ex rel. Southern R. Co. v. Mayfield, 362 Mo. 101, 240, S.W.2d 106 (Sup. Ct. 1951), certiorari denied 342 U.S. 871, 72 S.Ct. 107, 96 L.Ed. 655 (1951). The New Jersey Supreme Court, in the Gore case, laid down the principles which trial judges in this State must follow in applying the doctrine. In that case our Supreme Court declared that "the dispositive consideration" is, where will trial "best serve the convenience of the parties and the ends of justice. * * * [It] resists formalization and looks to the realities that make for doing justice."
The doctrine may be applied in cases in which there is no forum shopping. For example, it may be applied even against resident plaintiffs. As Justice Jacobs said in the Gore case (15 N.J., at page 311):
"It turns, rather, on considerations of convenience and justice and it may, therefore, be applied for and against domestic residents and citizens as well as for and against foreign residents and citizens. It is true that under the doctrine an action by or against a resident will ordinarily not be dismissed as being in an inconvenient forum, but it is also true that ordinarily an action by or against a non-resident will not be dismissed as such. It is only in those exceptional cases where a weighing of all of the many *545 relevant factors, of which residence is but part, decisively establishes that there is available another forum where trial will best serve the convenience of the parties and the ends of justice, that the doctrine is ever invoked."
See also the cases discussed by Justice Jacobs at pages 307-308 of the Gore opinion.
A footnote to the dissenting opinion of Justices Clark, Douglas and the Chief Justice in Norwood v. Kirkpatrick, 349 U.S. 29, at page 35, 75 S.Ct. 544, at page 548, 99 L.Ed. 789 (1955), lists numerous cases in which it has been stated that the paramount consideration is the ends of justice. See also Barrett, "The Doctrine of Forum Non Conveniens," 35 Cal. L. Rev. 380 (1947); Braucher, "The Inconvenient Federal Forum," 60 Harv. L. Rev. 908 (1947); Dainow, "The Inappropriate Forum," 29 Ill. L. Rev. 867 (1935); Foster, "Place of Trial  Interstate Application of Intrastate Methods of Adjustment," 44 Harv. L. Rev. 41 (1930); Blair, "The Doctrine of Forum Non Conveniens in Anglo-American Law," 29 Col. L. Rev. 1 (1929).
There are no immutable boundaries confining the doctrine, nor should there be. As Justice Jackson said in Gulf Oil Corp. v. Gilbert, supra, 67 S.Ct., at pages 842-843:
"* * * the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it.
Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." (Emphasis added.)
In Koster v. (American) Lumbermens Mutual Cas. Co., 330 U.S. 518, at page 524, 67 S.Ct. 828, at page 832, 91 L.Ed. 1067 (1947), the Supreme Court said the doctrine is applied not only in cases of oppression and vexation, but also when the facts "make trial in a chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." And Justice Jacobs *546 said (Gore, supra, 15 N.J., at page 306), "Factors of public interest also have place in applying the doctrine."
R.R. 4:1-2 has declared the public policy of our practice to be "to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." And though he spoke before the adoption of the rule, Judge Brown spoke in its spirit when he said, in Kantakevich v. Delaware, L. & W.R. Co., 18 N.J. Misc. 77, 80, 10 A.2d 651 (Cir. Ct. 1940):
"The question of whether a trial court should refuse to exercise its jurisdiction where the reasons are cogent and clear involves more than comity, courtesy or the doctrine of forum non conveniens. It may involve reasons which might be successfully advanced in cases between citizens of our state in our courts; an increase of judges and courts necessitated by an excessive influx of foreign litigation from other states and foreign countries attended by an unreasonable burden of expense upon the taxpayers of New Jersey and to the detriment of citizens of our state in having their cases tried; the prevention of vexatious practices in the trial of cases and to leave our trial courts their inherent right to see that justice is fairly administered and to encourage trials to be held in the forum where the remedy is more complete. It involves not only the right of a foreign litigant but also the remedy to be fairly and justly controlled. Stated more succinctly where the ends of justice clearly indicate that if a controversy tried in this state would result in an unfair burden upon and disadvantage to citizens of this state or that the controversy may be more suitably tried and the remedy more complete in another forum, then the parties should be relegated to that forum. A detailed and settled rule of procedure that would apply in every case is difficult if not impossible to state. It may be necessary to decide each case upon the facts and circumstances connected with the case."
In his landmark article "The Doctrine of Forum Non Conveniens in Anglo-American Law," 29 Col. L. Rev. 1, supra, Paxton Blair pointed out that the doctrine grew from small beginnings in individual cases in which the court sought to do justice under particular circumstances. It was only after a number of such cases had been decided over many years that someone thought to extract a principle from them, and to give that principle a Latin name. According to Blair, American courts did not even begin to use the term "forum non conveniens" until 1916.
*547 Giving a Latin name to the doctrine did not mean that it had reached its full maturity and had lost all capacity for growth and accommodation, like a butterfly preserved in amber. As is true with so many doctrines in our law, the cases in which this doctrine has been applied give internal evidence of its capacity for accommodation. As Robert Braucher aptly said in "The Inconvenient Federal Forum," 60 Harv. L. Rev. 908, supra, at pp. 930-932:
"It should be apparent from this survey that the principal characteristic of this branch of the law is its absurd complexity. A major source of the difficulty is that under the rather amorphous heading forum non conveniens the courts have been influenced by two basic notions whose implications are not entirely consistent: that of abuse of process and that of trial convenience.
Both notions appear in Gulf Oil Corp. v. Gilbert, but the first gets star billing. `Imposition' on the court's jurisdiction, `vexation,' `oppression,' `harassment'; this is the language of abuse of process. It assimilates forum non conveniens to the jurisdiction of equity to enjoin vexatious and oppressive suits. * * *
Thus conceived, we should not expect forum non conveniens to be a judicial favorite. * * *
Forum non conveniens is more appealing when considered as a discretionary adjunct to the rules regulating place of trial. The parties may have legitimate differences as to the appropriate place to try the lawsuit, differences which cannot always be satisfactorily resolved by rules of jurisdiction, venue, and service of process. * * * The practice then would be to stay the action on the application of the defendant in a proper case, but only on condition that he enter an appearance in the more convenient forum, make an effective waiver of any advantages the delay might otherwise afford him, and comply with such other terms as justice may require. Jurisdiction would be retained to ensure that the case would be transferred smoothly and fairly. The stay order would be interlocutory; if appealable at all, it would be reversible only if it had no rational basis.
The early practice in Scotland seems sometimes to have followed such a pattern; and in this country, particularly in admiralty, judicial decisions can be found which tend to support it."
As Justice Jacobs pointed out in the Gore case, 15 N.J., at page 307:
"Under modern conditions corporations are often incorporated in states other than those where their main business is conducted and * * * under such circumstances the corporate domicil is *548 entitled to little weight under the convenient forum doctrine `which resists formalization and looks to the realities that make for doing justice.'"
Today there are many corporations whose operations carry their agents and their ships, trains, planes, vehicles and other property into every state in the Union and all over the world. The application of forum non conveniens to suits against such a corporation should not depend upon the accident of whether it could have been served with process in the more convenient jurisdiction without its consent. Involuntary amenability to process often depends on tenuous distinctions and accidents of local law. A vast body of law has grown up about the concept of "doing business," and over the numerous statutes permitting service upon conductors, ticket agents, solicitors, commissioners of motor vehicles, etc. The cases which set aside or refuse to set aside service on corporate officers, directors, employees and other agents are as numerous as they are varied in result in the several states. No reason occurs to me, and none has been suggested, why consent of the defendant now given should not be equal to the establishment of involuntary amenability under one of these statutes or cases. See, for example, General Electric Co. v. Central Transit Warehouse Co., supra. In that case Judge (now Supreme Court Justice) Whittaker held that defendant was not amenable to process in the more convenient forum (and therefore he refused to transfer under 1404(a)); but upon reargument he held upon the same facts that it was amenable to process, and granted the transfer.
In 1948 Congress revised Title 28 of the United States Code and provided in section 1404(a) that:
"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." (Emphasis added)
In spite of the italicized language, the federal courts have held that a case may be transferred to a district in which *549 the defendant is not amenable to process, i.e., where it could not have been brought, upon defendant's consent to appear. In other words, the federal courts hold that "the convenience of parties and witnesses" and "interest of justice" are to be determined by what can now be accomplished, not by what might have been. Those courts have frankly equated the words "where it might have been brought," with "where it can now be brought." See, for example, Paramount Pictures v. Rodney, supra; Torres v. Walsh, 221 F.2d 319 (2 Cir. 1955), certiorari denied 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 746 (1955); In re Josephson, 218 F.2d 174 (1 Cir. 1954); Anthony v. Kaufman, 193 F.2d 85 (2 Cir. 1951), certiorari denied 342 U.S. 955, 72 S.Ct. 629, 96 L.Ed. 710 (1951); Cain v. Bowater's Newfoundland Pulp & Paper Mills, 127 F. Supp. 949 (D.C.E.D. Pa. 1954). These and other cases are collected and discussed by Judge Irving R. Kaufman in his excellent "Observations on Transfers under Section 1404(a)," 10 F.R.D. 595 (1951), and "Further Observations on Transfers under Section 1404(a)," 56 Col. L.R. 1 (1956). See also 51 Col. L.R. 762 (1951).
There have been vigorous dissents to this construction of 1404(a), as in Paramount Pictures v. Rodney, supra, but these dissents are based on the fact that it is a statute (1404(a)) which is being construed, and the argument is that the italicized language of 1404(a) should be taken literally, as written by Congress, especially since it has been held that 1404(a) is "different" than forum non conveniens, Norwood v. Kirkpatrick, supra. However, since we are dealing here not with a statute, but with the common-law doctrine of forum non conveniens as defined by the New Jersey Supreme Court in the Gore case, our approach may be broader than if we were called upon to construe a statute. Therefore the logic of the federal cases which even in construing a statute equate present consent with antecedent amenability to service, in spite of the italicized words of 1404(a), is most persuasive to lead us to the same result *550 here. As Judge Biggs said in Paramount Pictures v. Rodney, supra, 186 F.2d, at page 114:
"By joining in the motion to transfer the defendants have waived any objection to Texas venue and have agreed to submit themselves to a Texas court. Therefore, suits embracing the same parties and the same subject matter could now be brought and maintained in Texas. * * * The difference between the phrase `might have been brought' of Section 1404 (a) and that employed in this opinion, `could now be brought,' is no more than one of tense and grammar, the imperfect subjunctive as compared to the pluperfect subjunctive. Surely Congress did not intend the effect of an important remedial statute to turn upon tense or a rule of grammar."
It is true that under 1404(a) the federal courts do not dismiss, as is ordinarily the disposition in cases of forum non conveniens, but transfer from one branch of the federal judicial system to another. It has been said that that is the reason federal courts transfer under 1404(a) when they would not dismiss under forum non conveniens. However, as Braucher pointed out supra, even at common law cases were sometimes stayed rather than dismissed; and as Justice Jacobs pointed out in the Gore case, in New Jersey, even after dismissal upon forum non conveniens, the plaintiff may return to this court if it later develops that an injustice was done to the plaintiff by the dismissal.
The fact that the federal courts take into consideration that transfer under 1404(a) is not as drastic as dismissal is itself an illustration of the point that the application based on forum non conveniens is addressed to the court's discretion, and the court to which the plaintiff is to be relegated (as well as the defendant's amenability or willingness to be sued therein) are merely facts to be taken into consideration with all of the other relevant facts in deciding how that discretion is to be exercised. In that connection, it is to be noted that at about the same time that the above actions were instituted, the attorney for the plaintiffs in these three cases instituted five other actions for five other Puerto Rican plaintiffs against the same defendants on similar claims, in the United States District Court for the District of New Jersey. Flores v. A.H. Bull Steamship *551 Co., Docket No. 76656; Martinez v. A.H. Bull Steamship Co., Docket No. 76256; Torres v. Baltimore Insular Line, Docket No. 76556; Aponte v. A.H. Bull Steamship Co., Docket No. 78956; Morales v. A.H. Bull Steamship Co., Docket No. 76756. Upon defendants' motions, made under 1404(a), and upon their agreement to appear in Puerto Rico, the United States District Judge in New Jersey transferred the cases to the United States District Court in Puerto Rico.
The United States District Court for the District of New Jersey is only a few blocks from this court, in the City of Newark. Certainly if the convenience of the parties and witnesses and the interest of justice commanded the transfer of the cases pending in the federal court to Puerto Rico, they do in this court. It would be odd indeed to say it is convenient for the parties and witnesses to try their cases in this court on Market Street, but not in the federal court on Broad Street, and that the interest of justice is different in the two locations.
Let us turn, then, to the sole remaining question which is, as Justice Jacobs said, "Where will trial best serve the convenience of the parties and the ends of justice?"

III.
As has been stated, each accident happened in Puerto Rico, on a ship moored in Puerto Rican waters. Each plaintiff was hospitalized in Puerto Rico. In each case the issue has been raised that the plaintiff was not an employee of the defendant but of an independent contractor. Most if not all of the witnesses to the accident are residents of Puerto Rico. Witnesses that may be required to prove that plaintiff was the employee of someone other than defendant are residents of Puerto Rico. The doctors who treated each plaintiff are residents of Puerto Rico. The hospital and other records are in Puerto Rico. The language common to the plaintiffs and the witnesses is Spanish. If the cases were tried here, it would involve bringing witnesses a long *552 distance at great expense or the taking of depositions and, in either event, much translation. As the court said in Gulf Oil Corp. v. Gilbert, supra, 67 S.C., at page 844:
"Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants. Nor is it necessarily cured by the statement of plaintiff's counsel that he will see to getting many of the witnesses to the trial and that some of them `would be delighted to come to New York to testify.' There may be circumstances where such a proposal should be given weight. In others the offer may not turn out to be as generous as defendant or court might suppose it to be. Such matters are for the District Court to decide in exercise of a sound discretion."
Nor are the courts of this State without an interest in the matter. These cases have no place in our courts except for the fact that the defendants are corporations of New Jersey.
For the foregoing reasons, it seems to me that the plaintiffs should be remitted to the courts of Puerto Rico.
The plaintiffs, of course, are entitled to have the same relative position in the courts of Puerto Rico as they have in the courts of this State as of the date these actions were begun. For example, no defense based on any statute of limitation should there be asserted which could not have been raised in New Jersey as of the date of these actions. In addition, each plaintiff should be reimbursed for his costs and oue-of-pocket expenses incurred in instituting his action in New Jersey, including a reasonable counsel fee for the institution of his action.
An order may be presented in accordance with this opinion, which shall provide that the plaintiffs have 90 days within which to institute action in Puerto Rico after which, if defendants appear therein and carry out the terms of the order, these actions will be dismissed, subject to R.R. 4:62-2.