NOAH DIETRICH, Plaintiff, v. TEXAS NATIONAL PETROLEUM Co., a Delaware Corporation, UNION OIL COMPANY OF CALIFORNIA, *a California corporation,* W. STEWART BOYLE, GEORGE BOND, L. C. OLDHAM, CHARLES F. BAKER and H. W. SANDERS, individually, Defendants.

(*August* 19, 1963.)

LYNCH, *J.*, sitting.

*H. Albert Young* and *Bruce M. Stargatt* (of Morford, Young and Conaway) for Plaintiff.

*William Prickett, Sr.,* (of Prickett and Prickett) for defendant, Texas National Petroleum Co.

*David F. Anderson* (of Berl, Potter and Anderson) for defendant, Union Oil Company of California.

` Superior Court for New Castle County, No. 152, Civil Action, 1963.

LYNCH, Judge.

Plaintiff, a resident of California, has sued Texas National Petroleum Co., a Delaware Corporation, (refer-

red to hereafter as T.N.P.) and Union Oil Company of California, a California corporation, and registered to do business in Delaware, on causes of action based on alleged contract liability and on alleged tort liability. The complaint names a number of individuals, residents of Texas or California as defendants. No individual defendant resides in Delaware and none have been served with any kind of process, nor have they appeared and answered the complaint.

It appears that in 1961-1962, Union negotiated with T.N.P. to purchase from it certain of T.N.P.'s assets located in the Gulf Coast area and the Western States, consisting largely of crude oil and gas reserves. The negotiations took place and were completed about May, 1962, entirely in California. There were some communications between California and Texas.

Plaintiff fild suit on March 27, 1963. He sues to recover a "finder's fee for having allegedly found Union as a buyer of T.N.P.'s assets, and having introduced one to the other. Other causes of action are asserted in the complaint, involving the individual defendants; they, however, are not of importance since such defendants are not before the Court.

The complaint alleges that T.N.P. agreed with Plaintiff that if plaintiff found a purchaser for its assets, he would be fully compensated; it further avers that he found defendant Union and introduced Union to T.N.P.; and that as a result of this introduction, T.N.P. entered into and concluded negotiations with Union resulting in Union's purchase of T.N.P.'s assets for $54,000,000. Plaintiff therefore claims that he became entitled to a "finder's fee" from Texas National. Alternatively, plaintiff's claim is that T.N.P. and/or Union became obligated to compensate him on a *quantum meruit* basis for the reasonable value

of his services in making the introduction which led to Union's purchase of T.N.P.'s assets. Plaintiff further claims that defendants have conspired together with certain individuals named in the complaint to deprive him of his "finder's fee" in a fashion which represented malicious interference with plaintiff's contract with T.N.P.

T.N.P. and Union were served with process on April 1, 1963.

At one time, T.N.P. was registered to do business in Texas. It filed a Certificate of Withdrawal from that State on March 18, 1963. By this Certificate of Withdrawal T.N.P. represented to Texas officials (1) that it surrendered its authority to transact business in Texas; (2) that it was no longer transacting business in Texas; and (3) that the corporation revoked the authority of its registered agent in that State to accept service of process; but it asserted that service of process in any action, suit, or proceeding *"based upon any cause of action, arising in Texas during the time the corporation was authorized to transact business in this State might thereafter be made on such corporation by service thereof on the Secretary of State."* It is highly doubtful that it can be demonstrated that Plaintiff's causes of action arose in Texas; even T.N.P. makes no argument that they did.

The statutory effect of such withdrawal is stated in Article 8.15 of the Texas Business Corporation Act, V.A.T.S.

"* * * Upon the issuance of such certificate of withdrawal, the authority of the corporation to transact business in this State shall cease."

It appears that T.N.P. is no longer actively conducting any business, and is in the process of winding up its affairs, intending eventually to make distribution of its cash assets to its stockholders.

A study of the docket in the Office of the Prothonotary of this county and of the papers which have been filed in this case reveal many interesting developments.

March 27, 1963    Suit filed.

April 1           Corporate defendants served with process.

April 11          William Prickett files appearance for T.N.P.

April 18          Stipulation between Plaintiff's counsel and Union's attorney extending Union's time to plead or answer.

April 18          T.N.P. files its answer.
                  T.N.P. propounds interrogatories to Plaintiff. Notice given by T.N.P. of taking of Plaintiff's deposition in Wilmington on May 15, 1963.

April 26          Plaintiff propounds interrogatories to Union.

May 1             Union objects to certain of Plaintiff's interrogatories.

May 2             Stipulation extending time to May 10, 1963, for Plaintiff to answer T.N.P.'s Interrogatories.

May 10            Union files answer to Plaintiff's interrogatories (as not objected to). Union moves (1) to Dismiss under Rule 12 (b), *Del. C.* and to Dismiss on ground of *Forum non conveniens*.

May 13            Plaintiff files his answers to interrogatories propounded by T.N.P.

| | |
|---|---|
| May 16 | Plaintiff gives notice of taking desposition of Defendant Union by named Officers. |
| May 16 | Plaintiff gives notice of taking desposition of Defendant T.N.P. |
| May 20 | Plaintiff propounds Interrogatories to T.N.P. |
| May 20 | Plaintiff moves for production of records of Union. |
| May 21 | T.N.P. moves for protective order under Rule 30 (b) as to deposition of W. Stewart Boyle. |
| May 21 | Union moves for protective order under Rule 30 (b) as to depositions of its officers. |
| May 21 | T.N.P. moves to amend its answer; to dismiss on ground of *Forum non conveniens* and for an amended Order of Protection. |
| May 24 | Order entered on Plaintiff's motion to produce records of Union and directing production of the records. |
| May 28 | Order entered setting pending motions for argument and fixing Brief Schedules and permitting Plaintiff to proceed with limited discovery. |
| June 14 | T.N.P. filed a second amendment to its answer by stipulation dated June 11, 1963. |

In Union's Motion to Dismiss on the ground of *Forum non conveniens* filed May 10, 1963, the suggestion is made

that Plaintiff should have brought suit in either Texas or California; the motion notes—both the corporate defendants are subject to the jurisdiction of the courts of Texas. The Motion of T.N.P. to dismiss on grounds of *Forum non conveniens* notes that "both the corporate defendants are subject to the jurisdiction of Texas."

It has clearly developed that these contentions were not factually true. I therefore find that plaintiff had no choice of jurisdictions at the time he filed his suit. T.N.P. could not be served in either Texas or California on March 27, 1963. Delaware was the only state in which he could have obtained service of process on both corporate defendants. Plaintiff stresses this in his brief.

As I read *Forcum-Dean Company v. Mo. Pac. R. R. Co.*, 341 S.W.2d 464 (Tex.Civ.App.1960) Plaintiff could not have maintained a suit against either or both of the two corporate defendants in Texas, since the suit did not involve Texas residents or citizens, and the cause of action had not arisen in Texas.

Just a few days before oral argument was to be held, T.N.P. filed an "Offer of Stipulation", agreeing to waive "service of process" and agreeing to appear generally in an appropriate court in the State of California on a complaint substantially in the form that was filed in this case.

A brief review of the complaint and of T.N.P.'s answer thereto shows that it denies both the alleged agreement to pay the "customary finder's fee" and that plaintiff found and introduced Union to T.N.P. "as a purchaser of" T.N.P.'s assets. The answer, as amended, admits that Union purchased "certain of" T.N.P.'s assets and that T.N.P.'s shareholders approved the sale. Such answer admits plaintiff has demanded "compensation from" T.N.P. and "that it has refused to pay him anything"; in the same paragraph of the answer, T.N.P. stated it is

without knowledge or information sufficient to form a belief as to whether there is such a thing as a "customary finder's fee". T.N.P. denies it owes plaintiff the amount claimed; it denies it owes plaintiff "the reasonable value" of his work and labor in finding Union as the purchaser of its assets.

As his Fourth cause of action, plaintiff charged that after May, 1962, the corporate defendants and certain of their officers conspired together in order to deprive him the compensation due him; that they coerced "certain individuals and business contacts" so as to deprive him of his compensation; that plaintiff would have earned and become entitled to his compensation had it not been for the conspiracy, and their acts caused plaintiff to suffer damages.

As his Fifth cause of action, plaintiff charges that T.N.P.'s corporate officers made representations to him about his finding a purchaser for assets of T.N.P. and to compensate him therefor; that plaintiff relied on these representations; that as a result of such reliance on such false misrepresentations plaintiff has been damaged.

T.N.P.'s answer (1) generally denied the allegations of Plaintiff's Fourth and Fifth causes of action; (2) contended that its president had no authority to agree in its behalf to retain plaintiff to find a purchaser for assets of T.N.P. or to compensate him for finding a purchaser of T.N.P.'s assets; (3) alleged that these officers did not retain plaintiff to find a purchaser of its assets or agree that T.N.P. would compensate him as such; and (4) that its president made no false representations to Plaintiff as to his authority to retain plaintiff as a finder for sale of its assets or to compensate him for finding a purchaser of its assets.

By an amendment to its answer pursuant to leave of court granted May 24, 1963, T.N.P. filed as a First affirmative defense, the defense of *forum non conveniens,* reciting the usual factors advanced in support thereof. This amendment likewise set up a Second and Third Affirmative Defense.

The Second Affirmative Defense referred to the agreement alleged in the complaint and set up as defenses several California Statutes, such as (1) the Statute of Frauds (California Civil Code, § 1624 and California Code of Civil Procedure, § 1973) ; (2) the California Business and Professions Codes (a) including the so-called "Business Opportunity Regulations", which make it unlawful to act as a "business opportunity broker" without being licensed as such, and providing that the California courts can not entertain a suit "for collection of compensation" arising from such activities without "plaintiff alleging and proving" he was "a duly licensed opportunity broker" "* * * at the time the alleged cause of action arose" (Business Opportunity Regulations §§ 10250, 10251, 10252, 10252.5, 10256, 10257, 10258, 10259 and 10260) ; and (b) so-called Real Estate Regulations which make it unlawful to act as a "real estate broker" without being licensed as such, and providing that the California courts cannot entertain a suit "for the collection of compensation" arising from such activities "without plaintiff alleging and proving" he was a "duly licensed real estate broker * * * at the time the alleged cause of action arose" (Real Estate Regulations §§ 10130, 10131, 10134, 10136, 10138 and 10139). In both of these Statutes criminal sanctions are provided, if the statutes are violated.

T.N.P.'s Third Affirmative Defense pleads Art. 600a and Art. 6573a of the Vernon's Ann. Revised Civil Statutes of Texas and aver that if the contract pleaded by plaintiff was made in Texas, it was unenforceable by virtue of the

pleaded statutes. Since it stands conceded the contract, if any, was not made in Texas, and that the Texas Courts cannot be involved, this Third Affirmative Defense can be disregarded.

When examined on depositions, plaintiff conceded he had no license as a broker from either California or Texas under any of the foregoing Statutes; he contended at deposition that no license was required in relation to claiming and recovery of a "finder's fee".

It appears from the deposition that plaintiff had no written agreement with either T.N.P. or Union to pay a finder's fee. Plaintiff testified in his deposition that in his conversations with Mr. Boyle, President of T.N.P., and with George Bond, a Vice-president of Union, Plaintiff had stated to each of them, "I am the finder in this situation"; and he stated he expected compensation; it seems clear that no terms were fixed as to what this compensation would be and plaintiff probably would be required to show what is the "customary finder's fee" and how it is determined. If plaintiff cannot do this, he would probably be required to show a right of recovery on "quantum meruit" grounds.

T.N.P. has urged that the doctrine of *forum non conveniens* is applied "where the forum court would be obliged to apply foreign law,[1] with which it is not familiar," and notes that this factor was referred to in *Gulf v. Gilbert*, considered hereafter.

The Court assumes that T.N.P. had the aforecited statutes in mind as presenting the problem. On the other hand, examination of the California Law involving applicability of the Statute of Frauds to "finders" seems now settled, *Palmer v. Wahler*, 133 Cal.App.2d 705, 285 P.2d

---

[1]See comment of now Mr. Justice Carey, post, page 464.

8, 11, (Dist.Ct. of App. 1955), see extensive comment, 44 Calif.L.Rev. 413; see also *Pawlak v. Cox*, 148 Cal.App.2d 294, 306 P.2d 619, 622 (Dist.Ct. of App., 1957); and *Spielberg v. Granz*, 185 Cal.App.2d 283, 8 Cal.Rptr. 190, 196 (Dist.Ct. of App. 1960); see also *Meisner v. Reliance Steel & Aluminum Co.*, 273 F.2d 49, 51 (C.C.A. 9, 1959); clearly if defendants show that the plaintiff's activities in the sale of T.N.P.'s assets to Union went beyond the "finding of a buyer", the pleaded Statute of Frauds would preclude his recovery, see *Spielberg v. Granz*, supra and *Meisner v. Reliance Steel & Aluminum Co.*, supra; on the other hand if plaintiff's evidence shows he did "find" Union as the buyer of T.N.P.'s assets, there seems no reason why he should not recover.

Union argues that *Pacific Southwest Development Corporation v. Western Pacific R. R. Co.* 47 Cal.2d 62, 301 P.2d 825 (Calif.Sup.Ct., 1956) which was a 4-3 holding has created a doubt as to the soundness and finality of *Palmer v. Wahler*, supra, but several readings of the majority and dissenting opinions show clearly that the Supreme Court was not even thinking of a "finder's fee". The other cases cited, following *Palmer v. Wahler*, and decided after the Pacific Southwest Development Corp. case, make it clear there is no substance to Union's argument.

It has been held in Delaware. *Lams v. F. H. Smith Company*, 6 W.W.Harr. 477, 178 A. 651 (Super.Ct. 1935) that Delaware will apply the Statute of Frauds provisions of the State where the contract is made in determining the validity of the contract. If the California Courts rule that the California Statute of Frauds applies to "finder's fees" defendants can be assured this Court will apply the rule to defeat Plaintiff's claim.

Defendants cite California Business and Professions Code, but seemingly they are inapplicable here, since they appear to apply only to suits filed in the California Courts; but the question is not decided at this time.

The Court is not impressed with the arguments involving application of foreign law as a reason for dismissing the case. The issues appear to be simple and should be easily disposed of in our Courts; see the unreported Schindewolf case, discussed post at pages 29 and 30, and *Post, et al. v. Yates-American Machine Company* (C. A. 118, 1963, New Castle County, unreported), where it was observed:

"I am not aware of any controversy in this action that will have to be decided according to some peculiar and unfamiliar legal principles * * * beyond the capabilities of the Judges [of our Courts]. * * *."

See further, the Moudace case, discussed post at page 587. The Delaware Courts have had wide experience in construing and applying foreign law. In the Bata Shoe Company litigation our Court of Chancery had to study and apply the laws of several foreign countries in reaching its ultimate determination, *Bata v. Hill*, 139 A.2d 159, 162, 163 and 164.

Defendants in their briefs have discussed many factors besides that just considered. They urge these should appeal to the Court as reasons for dismissing the case on the ground of *forum non conveniens;* they cite *Winsor v. United Air Lines*, 2 Storey 161, 154 A.2d 561 (Super.Ct. 1958) and *Chrysler Corporation v. Dann*, 3 Storey 430, 171 A.2d 223 (Super.Ct., 1961).

Initially they took no notice of or referred to the unreported decisions of *Schindewolf v. Chicago, R. I. and*

*Pacific R. R. Co.,* (C.A. 601, 1951 New Castle County) or to *Post v. Yates-American Machine Co.* (C.A. 118, 1963 New Castle County).

██ Reading these four cases together, there now can be no doubt but that Delaware courts recognize the doctrine of *Forum non conveniens,* and apply the doctrine —if it is shown to apply—after a consideration of all required factors, and upon balancing of the interests of all parties to the litigation to determine where justice is best to be served.

██ It is clear though, that *Chrysler Corp. v. Dann,* supra and *Post v. Yates-American Machine Co.,* supra both held "the plaintiff's choice of forum should rarely be disturbed." See also *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055.

The meaning, force and effect of this last cited case cannot be overlooked; it is the fountain head of the modern meaning and acceptance of the doctrine of *forum non conveniens;* it will indicate the force and scope of such doctrine and how it is to be applied.

██ It was prefaced by several law review articles, 29 Columbia L. R. 1-34, 43 Harv.L.R. 1217-1248; and 44 Harv.L.R. 41-61; probably many more. After Gilbert was decided other law review articles followed; 35 Calif.L.Rev. 380-422; 60 Harv.L.R. 908-939; 56 Yale L.S. 1234-1250; 29 Illinois L.R. 867-890; see also notes in 13 Boston U.L.R. 349-354; 1957 Washington Univ.L.Q. 165-170 and 4 St. Louis Univ.L.J. 198-203. A study of these articles and notes will give one a rather complete comprehension of the doctrine, its history and how it has been applied. One thing is clear and stands out—it is a matter of discretion for the Court to apply or refuse to apply the doctrine.

The text books of a generation or so back dealt with the doctrine in a manner that is not in keeping with present day acceptance. For instance, former Judge Goodrich said, at p. 15, Goodrich on Conflict of Laws:

*"Forum Non Conveniens.* Although not identical with the public policy doctrine, yet springing from essentially the same roots, is the doctrine of forum non conveniens. The latter doctrine has established the rule that *if neither the plaintiff, defendant, nor the cause of action is related to the forum, the action will not be heard. Only a few courts adhere to this view.* It may be argued that some courts are crowded, and that foreign suits are burdensome while the fees paid do not cover the cost of the suit. However, if one state shuts its courts to residents of another state, there may be retaliation by the other state. *In the long run there will probably be no gain but a loss and it would seem more desirable, on the whole, to allow free flow of litigation."* (Emphasis supplied)

See 14 Am.Jur.—Courts—§ 230; and 21 C.J.S. Courts § 77. Both of these authorities make the statement that "some authorities take the view that the doctrine of *forum non conveniens* is to be applied with caution," and "* * * courts do not ordinarily refuse to entertain actions * * * on a cause of action growing out of a commercial transaction or contract, * * *." Seemingly they consider the rule is otherwise if the cause of action is based on a tort. 21 C.J.S. Courts § 77, p. 115. Recent cases from state courts consider the essentials of the doctrine and indicate their views as to when the doctrine is to be applied and when it is not. See *Vandam v. Smit,* 101 N.H. 508, 148 A.2d 289 (1959) and *Lynch v. Plesch,* 15 Misc.2d 746, 179 N.Y.S.2d 557, 560 (N.Y.Sup.Ct.1958) affirmed 10 A.D.2d 573, 197 N.Y.S.2d 409 (App.Div.1960).

The Gilbert case had an effect and gave life to a doctrine that theretofore had not had much acceptance by the Courts of this Country. See 56 Yale S.L. 1234, where the author wrote:

"In Court battles, as in warfare, new weapons of attack tend to be neutralized by new defenses. State laws giving courts jurisdiction over non-residents in certain circumstances have resulted in increased maneuverability for plaintiffs by providing a wider choice of forum. To counter this advantage defendants have increasingly been allowed to rely on the doctrine of forum non conveniens to restrict the plaintiff to the appropriate state court. Both Congress and the judiciary have during the past few years evidenced a desire to bestow the doctrine upon the federal courts, and in two decisions of the past term the Supreme Court has approved dismissals on forum non conveniens grounds.

"As with other legal labels, forum non conveniens means many things to many courts. In this discussion it will be used broadly to signify a discretionary power to decline the exercise of jurisdiction when the court is not an 'appropriate' tribunal. For the elements that make a court 'inappropriate,' it is necessary to turn to particular courts and individual cases."

In Gilbert, the United States Supreme Court was dealing there with a tort case arising in another State, and involving two non-residents; such is not true here. The Supreme Court stressed the idea that plaintiff's choice of forum was dictated by reasons which the Court characterized as harassment. That's not true here. The plaintiff here had no alternative of jurisdiction to sue. He had to sue in Delaware if he wanted to get jurisdiction over defendants in one Court, since Delaware was the one jurisdiction where process could be served on both corporate

defendants. One of these corporate defendants was a creature of this state; so one of the strongly motivating factors in Gilbert is not present in this case.

In Gilbert the United States Supreme Court stated emphatically that the doctrine "can never apply if there is absence of jurisdiction" 330 U.S. 504, 67 S.Ct. 841, 91 L.Ed. 1060; it further stated, 330 U.S. 506-507, 67 S.Ct. 842, 91 L.Ed. at 1061, that—

"* * * In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them."

It must be always kept in mind that Delaware was the one jurisdiction in which plaintiff could sue if he wanted to get jurisdiction of both corporate defendants in one court. Gilbert makes it plain that the doctrine of *forum non conveniens* is not applicable unless there is a choice of jurisdictions where the factor of service of process on the defendants is present; hence, I seriously doubt that the doctrine can or should be applied under the facts of this case. It would seem to be a matter of law and not one of discretion, yet all Courts approach application of the doctrine as if it is wholly one of the discretion of the Court.

Mr. Justice Jackson, speaking for the Majority—it was a 5-4 decision, holding that the doctrine applied—, said 330 U.S. 508, 67 S.Ct. 843, 91 L.Ed. p. 1062:

"* * *. *The doctrine leaves much to the discretion of the court to which plaintiff resorts,* and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex', 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But *unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*" (Emphasis supplied)

The dissent of Mr. Justice Black, 330 U.S. 512-513, 67 S.Ct. 845, 91 L.Ed. p. 1065, contains this most interesting statement:

"* * *. Except in relation to the exercise of the extraordinary admiralty and equity powers of district courts, this Court has never before held contrary to the general principle that 'the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.' * * *. Never until today has this Court held, in actions for money damages for violations of common law or statutory rights,

that a district court can abdicate its statutory duty to exercise its jurisdiction for the alleged convenience of the defendant to a lawsuit."

Pointing to some of the arguments that have been advanced in this case, the dissent said: (330 U.S. 515-516, 67 S.Ct. 846, 91 L.Ed. p. 846)

"* * * *any individual or corporate defendant* who does part of his business in states other than the one in which he is sued *will almost invariably be put to some inconvenience to defend himself. It will be a poorly represented multistate defendant who cannot produce substantial evidence and good reasons fitting the rule now adopted by this Court tending to establish that the forum* of action against him *is most inconvenient. The Court's new rule will thus clutter the very threshold of the federal courts with a preliminary trial of fact concerning the relative convenience of forums. The preliminary disposition of this factual question will, I believe, produce the very kind of uncertainty, confusion, and hardship which stalled* and handicapped *persons seeking compensation for maritime injuries following this Court's decision in* Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900. *The broad and indefinite discretion left to federal courts to decide the question of convenience from the welter of factors which are relevant to such a judgment, will inevitably produce a complex of close and indistinguishable decisions from which accurate prediction of the proper forum will become difficult, if not impossible. Yet plaintiffs will be asked 'to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual may not only suffer serious financial loss through the delay and*

*expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere.'* * * *. (Emphasis supplied)

"This very case illustrates the hazards of delay. It must be begun anew in another forum after the District Court, the Circuit Court of Appeals, and now this Court, have had their time-consuming say as to the relative convenience of the forum in which the plaintiff chose to seek redress."

Gilbert[2] must be read and its meaning and scope measured by the holding of the majority and the dissents in it and in *Koster v. Lumbermens Casualty Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067, decided the same day as Gilbert was decided. To me, the character or nature of the case before the Court has much weight and meaning in whether or not to apply the doctrine. The language quoted by Mr. Justice Black in the footnote appearing 330 U.S. 513, 67 S.Ct. 845, 91 L.Ed. 1065 has significance and which is not to be lightly ignored or put aside. Citing *Mondou v. N. Y. N. H. & H. R. Co.*, 223 U.S. 1, 58, 32 S.Ct. 169, 178, 56 L.Ed. 327, he quoted the statement: (footnote 1 on page 845, 67 S.Ct., 330 U.S. 513, 91 L.Ed. 1065)

"* * *. The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication. * * *"

---

[2]The majority reached the result noted on the ground that plaintiff was "forum shopping" and this was a factor in *Gore v. United States Steel Corp.*, 15 N.J. 301, at 305, 104 A.2d 670, at 672-676-677 (Sup.Ct.N.J. 1954). Such tactics should be discouraged.

At a later part in the same paragraph in *Mondou* in which the above quoted language appears, the Court said:

"* * *. * * * it never has been supposed that courts are at liberty to decline cognizance of cases * * * merely because the rules of law to be applied * * * are unlike those applied in other cases."

I look upon the case at bar as presenting a situation involving a contract brought against at least one Delaware corporation and this wholly differentiates it from Winsor on that ground above. The plaintiff had no choice of jurisdictions if he sought to sue both corporate defendants in the same court. These factors should weigh greatly against this Court concluding it should decline to entertain the suit under the doctrine of *forum non conveniens*—not unless other factors outweigh those that have been considered to this point.

The "Offer of Stipulation" submitted by T.N.P. on the eve of oral argument has been stressed by both defendants as a most convincing reason for the Court to grant their motions to dismiss, based on the doctrine of *forum non conveniens*. The court is less than convinced by the suggested concession. Plaintiff had no alternative in bringing his suit. Delaware was the only available jurisdiction open to him and I see no reason, absent his own decision, to compel plaintiff to accept the offer to stipulate.

The Gilbert case is good authority and precedent, but another case from the United States Supreme Court, *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, & 4 L.Ed.2d 1254 (1960) also presents some new and persuasive reasons for this Court to decline to compel plaintiff to accept the offer.

True that case was decided on the Transfer Statute (28 U.S.C.A. § 1404), but the reasoning used by the Supreme Court is apposite.

In Hoffman, the United States Supreme Court held that the decision to transfer may not be "* * * made to depend * * * upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." 363 U.S. at 343-344, 80 S.Ct. at 1089, 4 L.Ed. 2d at 1062.

In overruling contrary decisions reached by several Courts of Appeal, the United States Supreme Court said: (Id.)

"The thesis urged by petitioners would not only do violence to the plain words of § 1404(a), but would also inject gross discrimination. *That thesis, if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the defendants and in which they were willing to waive their statutory defenses as to venue and jurisdiction over their persons, regardless of the fact that such transferee district was not one in which the action 'might have been brought' by the plaintiff.* Conversely, that thesis would not permit the court, upon motion of the *plaintiffs* and a like showing of convenience, to transfer the action to the same district, without the consent and waiver of venue and personal jurisdiction defenses by the defendants. Nothing in § 1404 (a), or in its legislative history, suggests such a unilateral objective and we should not, under the guise of interpretation, ascribe to Congress any such discriminatory purpose." (Emphasis supplied)

*Hill v. Upper Mississippi Towing Corp.*, 252 Minn. 165, 89 N.W.2d 654 (1958) is to the same effect. There the plaintiff, a resident of Mississippi had been hurt in

Tennessee. He brought suit in Minnesota against defendant, a Minnesota corporation. Defendant offered to voluntarily appear in Tennessee, although it could not have originally been served there. Plaintiff declined to accept defendant's offer. Defendant moved for dismissal on the ground of *forum non conveniens*. The Minnesota Supreme Court in a scholarly and well reasoned opinion relying on Gilbert, supra denied the motion, holding that the determination of *forum non conveniens* must be made as of the time plaintiff brings his suit and that there be a choice of jurisdictions in which to sue. The Court ruled that defendant's unilateral offer to submit to another jurisdiction, although more convenient, could not govern where defendant was not subject to service of process in such other jurisdiction when plaintiff brought his suit. I wholly agree and think the case properly decided.

Except for the possible element of harassment which may have been the basis for the result, I regard *Vargas v. A. H. Bull Steamship Company*, 44 N.J.Super. 536, 131 A.2d 39 (1957) as representing an extreme view,[3] see observations of now Chief Justice Terry in *Chrysler Corp. v. Dann*, 3 Storey 430, 436, 171 A.2d 223, 226 (Super.Ct. 1961) of the Winsor case: "Winsor is an extreme case, * * *". Vargas involved Puerto Rican residents seeking recovery under the Jones Act for an accident which happened in Puerto Rico. Plaintiffs were treated in Puerto Rican hospitals by Puerto Rican physicians. All the witnesses lived in that country and all spoke only Spanish. Had the case been tried in New Jersey great problems and expense in translation would have arisen. By contrast with the case at bar the problems would have been involved, while here it is not an unusual situation for parties

[3]The writer of the opinion relied a great deal on Cove; see fn. on page 453 supra.

and witnesses to come to this State for trials. The Airplane brings witnesses here in short time and can return them with relatively little inconvenience. No language problem would be involved, since assumedly the parties and witnesses all speak English.

I am not persuaded, as was the learned judge who decided Vargas, by arguments which are based primarily on concepts which have their basis in the Federal Transfer Statute and on a group of cases which no longer can be recognized as the law since the United States Supreme Court ruled in *Hoffman v. Blaski,* supra.

I do not feel convinced that a defendant should be permitted to come into a Court—in which he could not be sued when the case was filed—and contend that the trial of the case should be held in another jurisdiction, on the basis of the doctrine under consideration, and in which he could not be sued at the time plaintiff filed suit, on arguments of inconvenience, either to defendant or even the Court, unless all agree. I doubt the Court's power to order acceptance of the proffered stipulation. See Mondou, supra 588.

I fear some Courts are reaching that stage where a choice of forum, as determined by plaintiff's lawyer is regarded as unimportant, notwithstanding Gilbert, supra; some defendants insist on trying to dictate the choice of trial forums, causing much loss of time and delay in cases; this is something which the Court should not permit, except for very good cause. Cases should be tried promptly and with a minimum of delay; otherwise justice can be delayed, if not defeated.

It was recognized in both the majority holdings in Gilbert and Koster, as well as in the dissents in those cases that a plaintiff's choice of forum is entitled to great consideration.

This Court expressly recognized the importance of this factor in *Chrysler Corp. v. Dann*, as well as in *Schindewolf v. Chicago, Rock Island & Pacific Railroad Co.*, (C.A. 641, 1951, New Castle County) and in *Post, Jr. et al., v. Yates-American Machine Company* (C.A. 118, 1963, New Castle County), both unreported cases, at least by implication.

The Gore case and probably the Vargas case may have been decided against a background of congested court calendars in New Jersey; see also 29 Columbia Law Review 1. That, however, is no longer true in Delaware. If this Court was faced with a condition of a crowded calendar it is quite possible that such a factor would have great weight in the exercise of the Court's discretion. This however, is no longer a consideration of any importance in this State. We now have an adequate number of judges so that the argument of inconvenience to the Court can be practically put aside.

Delaware has for nearly 75 years occupied an enviable position in the states because it has received large sums from incorporation fees and franchise taxes from our Corporation Laws—used at least in part, in the support of its government, including maintenance of its Courts.

For many years its Courts have been used by litigants from all over the world who have submitted varied legal problems, involving application of the laws of many countries and states.

The plaintiff, in his deposition, has testified he holds stock in Delaware Corporations; meaning in some small part he has contributed, indirectly, in the cost of our State Government.

There are many, like John Flynn and others who are critical of the Delaware Corporation Law, and take any

and every occasion to attack our Corporation Law. If the Courts of this State deny access to litigants having claims against Delaware Corporations, it can well be that we will be the target for further criticism and abuse. We very seldom have done so up to now and I think it would be unfortunate if our Courts evinced a disposition to now favor the corporate defendant. I think Delaware could and would live to regret a reputation of denying use of its Courts in situations, such as is presented here, if these motions are granted.

Then, too, the language quoted by Mr. Justice Black, supra page 588, from Mondou cannot be ignored. No doubt has been raised in the case at bar as to the "existence of the jurisdiction" by this Court of the parties and the subject matter of the case. Mr. Justice Black's words of caution, supra page 587, must not go unheeded; a party plaintiff should not, as he files his suit in Delaware, be faced with "uncertainty, confusion and hardship"—and I might add delays, except, of course, where there is "vexation" or "harassment" on his part of the corporate defendant or if the case does not involve some party subject to the jurisdiction of the Delaware Courts.

The law should not deteriorate to the point where our Courts produce "a complex of close and indistinguishable decisions from which accurate prediction of the proper forum will become difficult, if not impossible" supra 587. Plaintiff's should not be asked " 'to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership.' " See dissent in Gilbert, supra, page 587.

I note again that Gilbert and Koster were 5-4 rulings, and the Gore case, on which Vargas was based, and on which case, defendants here place great reliance, was de-

cided by a divided court in the New Jersey Supreme Court. Litigants in a Court of law have the right to expect some certainty in the legal principles which can apply to and control their cases.

I prefer the thinking expressed by Mr. Justice Reed in *Koster v. Lumbermans Mut. Casualty Co.*, 330 U.S. 518, 533, 535, 67 S.Ct. 828, 837, 91 L.Ed. 1067, 1080, where it was stated:

"* * *. It is clear that ordinarily a plaintiff may bring his suit in a forum of his choosing regardless of the inconvenience to him of making proof, so long as venue is properly laid. But here, as the Court points out, should the inconvenience to the defendant far outweigh any convenience to the plaintiff, it would not be fair to oppress the defendant, for it is not a legitimate advantage to a plaintiff to vex his opponent. *We cannot agree, however, that in assessing the relative convenience of the parties the court may put a burden upon the plaintiff to make a positive showing that it is to his legitimate advantage to bring suit in the forum of his choosing. It is the defendant's burden to convince the court that the forum is both inconvenient to it and not convenient to the plaintiff.*" (Emphasis supplied)

Then at 330 U.S. page 537, 67 S.Ct. page 838, 91 L.Ed. page 1081, Mr. Justice Reed said:

"* * * *the party seeking dismissal is forced to depend upon what 'will best serve the convenience of the parties and the ends of justice.' This, we think, requires strong and clear proof to overcome the presumption that the place of trial is controlled by the venue statute.*[4] Mere inconvenience is not enough." (Emphasis supplied)

----

[4]Clearly there is venue here of the case at bar. Const. Art. IV, § 16, *Del. C.*

If such a statement hasn't the force which the Courts thinks it has, when considered with the quoted statement from Moundace, supra page 588, then at least the holding of Hoffman, supra page 587 is to be heeded. "Inconvenience" alone is not compelling in the absence of a statute giving it weight. See *Baltimore & O. R. Co. v. Kepner,* 314 U.S. 44, 54, 62 S.Ct. 6, 10, 86 L.Ed. 28, 32. But see Gilbert, supra.

I have already noted that the Delaware Superior Court is not faced with a congested Court calendar. Some cases which have been filed in the current year already have been tried. Usually the trial date will depend in great measure on the disposition of counsel to get a case tried; this depends primarily on their own attitude toward the case. Problems of discovery may and do tend to delay trial of some cases; all cases do not fit one pattern, but over-all, the attitude of counsel can go far in prompt disposition of a case.

The recently announced "Calendar Status Study—released by the Institute of Judicial Administration," New York, shows that it usually takes 21 months from time of service of answer to trial time in the Superior Court of Los Angeles County (in personal injury cases) while the time lag is 17.6 months in this Court.[5]

Applying these figures to the case at bar, there is a very reasonable likelihood it can be tried here not later than the September 1964 Term at the latest, if not before, but if it is dismissed and refiled in Los Angeles, then at least 21 months more would have to elapse after answers

_____

[5]The Prothonotary's Report, as of the end of March 1963 Term, shows this Court is current with all cases filed in 1962 or thereafter. See Statement of President Judge Duffy in News Journal Papers published August 20, 1963 regarding state of Court Dockets.

are filed before the case could appear on the trial calendar. This would mean a trial date sometime in 1965. This is unthinkable in light of Plaintiff's age.

As the case now stands, T.N.P. has filed its answer. It should not require too much time for Union to file its Answer. If discovery can be completed in October and November it would mean that the case can be tried here in the December 1963 Term of this Court, if counsel are disposed to prepare to try the case.

I have noted from the deposition that plaintiff is 74 years of age. I consider this to be a factor of some importance in determining whether or not the principle of *forum non conveniens* is to be applied or not. Certainly, plaintiff should be afforded the opportunity, while alive, to present his claim before a Court of Law, and with all reasonable dispatch. No delay should be permitted,—certainly not at his stage of life. This is so particularly because he had no choice of jurisdictions available to him when he filed his suit. Had there been an alternative, the probabilities are that I would order dismissal because then it would be evident that he was vexing or harassing the defendants. Plaintiff was not "shopping" forums in filing his suit.

Coming then to the probable time the case will take for trial. Plaintiff has indicated that in addition to himself there may be about 5 or 6 other witnesses needed to prove his version of the case. Consideration of his deposition shows there are not too many people identified with what transpired between Plaintiff and T.N.P. or between Plaintiff and Union. The case undoubtedly will turn on issues of credibility. Plaintiff had the conversations with Messrs. Boyle and Bond or he did not; he either made the statements he claims he did or he did not; it was merely a matter of coincident that Mr. Boyle came to see Plaintiff

or it was not; it was purely coincidental that Mr. Bond called Plaintiff, as Plaintiff said he did or it was not; it might even be that there was no such call. These and other issues of fact will determine if Plaintiff can recover; there is no serious legal question at this time, as I read the deposition that Plaintiff gave. There cannot be too many witnesses on the real fact in issue.

Defendants, on the other hand, contend, throughout their affidavits that they may call as many as 15 witnesses. Very few of them have been identified with the fact in issue, as made by plaintiff's deposition; they are not shown to have any relationship to the case, save perhaps with Plaintiff's Fourth and Fifth Causes of Action. Defendants stress the "inconvenience" to them. If this case is prepared and tried as are others that have been tried before the Bar of this Court, it is a definite fact that the depositions of these witnesses will be taken, and if their depositions demonstrate that the Defendants' version of the transaction, on which Plaintiff bases his claim, is true, the testimony of such witnesses can be presented through their depositions. Consequently, I cannot give too much weight to the "inconvenience" of witnesses. The deposition had attached to it such documentary testimony as I now assume is in existence, so that is not a factor.

Each defendant has argued that "inconvenience" would be less in their respective states, than if the case is tried here.

T.N.P. argues it would be more convenient to try the case at Houston, Texas, notwithstanding it now appears that the Texas Courts would have no jurisdiction of the case, and the fact that it now clearly appears that T.N.P. is not doing any business anywhere. If the Court was inclined to dismiss the case and relegate Plaintiff to suit in Texas it would result in "inconvenience" to Union and to

the California witnesses, including Plaintiff and his witnesses. Then too, the statistics collected by the *Institute of Judicial Administration* show there is a lag of over 2 years between the time answers are filed to a complaint before trial can take place there. That could mean trial would take place in 1965 or in 1966.

Union has argued it would be more convenient for the trial to be held in California; this matter of convenience, it is pointed out, is not only in Union's interest and its witnesses, but would inure to plaintiff's interest. This is most appealing; and if T.N.P. could have been sued in California at the time the suit was filed I would probably order dismissal,[6] under contentions that would cause the least possible delay in the trial of the case. I think now, that under the case as it appeared when it was filed, it would be tantamount to a breach of duty for the Court to order dismissal now, when it appears that trial can be held here more quickly than if it were refiled in California, especially in light of Plaintiff's age. Then too, there would be some "inconvenience",—to the Texas witnesses.

"Inconvenience" to parties and witnesses is not a very weighty factor. Mr. Justice Carey noted that in his unreported opinion in *Schindewolf v. Chicago, Rock Island and Pacific Railroad Company* (C.A.No. 641-1951 New Castle County) when he stated:

"In the present instance no great inconvenience to the Court is pointed out, save the usual inconvenience which results from the trial of one more case. No great trouble about determining the law of Kansas is anticipated, nor does it appear that the trial is likely to be a very lengthy one.

------

[6]It is suggested that Legal Scholars consider adoption of a Uniform Statute permitting transfer of cases from the Courts of one State to a Court in another State, thus obviating the necessity of dismissal where the doctrine of *forum non conveniens* is applicable.

"As to the alleged inconvenience to the defendant, it seems clear * * * that a view would be of no help. I agree, however, that the expense of bringing four witnesses here from Kansas and two from California or, on the other hand, trying the case on their depositions, creates some inconvenience. It does not appear, however, that these witnesses will not be available at all, nor is it certain that there is a real necessity to have the testimony of all six. In any event, *I have found no case wherein the present doctrine has been applied unless far greater hardship has been shown than the mere fact of non-residence of six witnesses.*" (Emphasis supplied)

I would not rule, as urged by plaintiff's counsel, that somehow defendants have waived their right to urge application of the doctrine of *forum non conveniens* because of the time they raised the question, but delay in urging application of the doctrine will and should be considered in a determination of whether or not it is to be applied. See, however, 35 Calif.L.R. 380, 418 and *Fifth & Walnut v. Loew's, Inc.,* 76 F.Supp. 64, 67, (S.D.N.Y.1948) where there was a delay of several months. I wholly agree with the Court's observation that "* * * inaction does not prompt the court to exercise discretion in their favor." I do not believe, however, that a party "waives" his right to tender a reason for dismissal under the circumstances here presented.

I am not impressed, one way or the other, with the arguments regarding the financial position of defendants. This is hardly a factor in this case, although I can see where it would be in a case of an impecunious party litigant. It would be another factor for consideration in determining whether the Court should or should not apply the doctrine invoked here.

After a full consideration of all the various factors I hold that the Motions to Dismiss should be denied. An order to such effect may be presented on notice.